IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
AmTrust Bank,

                     Plaintiff,

     -vs-

NOVA FINANCIAL AND INVESTMENT
CORPORATION,

                     Defendant.

------------------------------------------------

: CASE NO. 1:12-CV–2553

: **MEMORANDUM OF OPINION AND**
: **ORDER**

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Before the Court is a motion to dismiss for failure to state a claim upon which relief can be granted filed by the defendant Nova Financial and Investment Corporation ("Nova"). Defendant Nova maintains that this lawsuit should be dismissed because the plaintiff's claims are time-barred. Alternatively, Nova argues that this matter should be transferred to the District of Arizona, Phoenix Division. For the reasons that follow, the Court will deny the motion to dismiss and grant the motion to transfer.

I.

For the purposes of resolving the defendant's motion, the following factual allegations, derived from the plaintiff's complaint, are accepted as true, while any conclusions of law are not. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On December 4, 2009, AmTrust Bank, formerly known as Ohio Savings Bank, of Cleveland, Ohio ("AmTrust") was closed by the Office of Thrift Supervision. (Complaint ¶1). The plaintiff Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver, succeeding to all rights, titles, property, powers and privileges of AmTrust, including the right to bring this lawsuit, pursuant to 12 U.S.C. § 1821(d)(2)(A)(I). (Id.). Defendant Nova, an Arizona corporation, is a mortgage broker with its principal place of business in Tucson, Arizona. (Complaint, ¶3).

The complaint alleges that as part of its regular business practice, AmTrust entered into contracts with mortgage brokers who submitted mortgage loans for funding or purchase by AmTrust. (Complaint, ¶7). This business was allegedly a regular part of the secondary mortgage market and was commonplace at the time of the events underlying this lawsuit. (Id.). On or about 1 August 1998, AmTrust and defendant Nova Financial entered into the Master Correspondent Loan Purchase Agreement (the "Purchase Agreement") whereby Nova allegedly promised to sell to AmTrust mortgage loans – including the loans that are the subject of this lawsuit. (Complaint, ¶8). According to the complaint, the parties agreed that the Purchase Agreement was to be construed and enforced in accordance with the laws of Ohio and that any legal proceedings arising from the Purchase Agreement were to be brought in Cleveland, Ohio. (Complaint ¶9).

2

It is further alleged that pursuant to the Purchase Agreement, Nova Financial promised to deliver an "Underwriting Package" to AmTrust for each loan sent for purchase. (Complaint, ¶10). An "Underwriting Package" is defined in the Purchase Agreement as all items required by AmTrust's underwriting standards, including, but not limited to, fully completed and signed loan applications. (Complaint, ¶10). With respect to each loan submitted under the Agreement, Nova allegedly warranted to AmTrust that the information contained in each Underwriting Package was complete, true, and correct. (Complaint, ¶11). In the event of a breach of this warranty, Nova allegedly agreed to repurchase the loan. (Complaint, ¶12). Nova further allegedly agreed to indemnify AmTrust from and against any and all losses resulting from a breach of any warranty contained in the Purchase Agreement. (Complaint, ¶13).

The plaintiff maintains that pursuant to the Purchase Agreement, the parties agreed to resolve any dispute arising from the Purchase Agreement in Ohio and that the Purchase Agreement would be construed and enforced under Ohio law. (Complaint, ¶9).

The plaintiff FDIC brought this lawsuit, as receiver for AmTrust Bank, against Nova Financial in relation to three mortgage loans allegedly sold to AmTrust by Nova pursuant to the Purchase Agreement. FDIC maintains that Nova breached the Agreement when Nova included false information in the underwriting packages of the subject loans. FDIC claims it was injured as a result of these breaches, and it seeks damages.

The defendant now moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that the plaintiff's claims are time barred. In the defendant's view, because

3

the plaintiff's causes of action accrued in Arizona, the Ohio Borrowing Statute requires that Arizona's four-year statute of limitation be applied in this instance. The defendant alternatively seeks transfer of venue to the district of Arizona. FDIC opposes both motions.

## II.

The plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A 12(b)(6) motion tests the sufficiency of the complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The Sixth Circuit has addressed the standard for a motion to dismiss on limitations grounds:

> The statute of limitations is an affirmative defense, see Fed.R.Civ.P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, see Fed.R.Civ.P. 8(a) (requiring "short and plain statement of the claim" (emphasis added)); Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, . . . dismissing the claim under Rule 12(b)(6) is appropriate. See Jones, 549 U.S. at 215, 127 S.Ct. 910 ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

<u>Cataldo v. U.S. Steel Corp.</u>, 676 F.3d 542, 547 (6th Cir. 2012)

### III.

In evaluating the defendant's claim that the FDIC's claims are time-barred, the Court is guided by the Financial Institutions Reform, Recovery, and Enforcement Act ("the Act" or "FIRREA"). Under the Act, the statute of limitations in a contract claim is the longer of

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law

12 U.S.C.§ 1821(d)(14)(A). For purposes of this rule, the date on which the statute of limitations begins to run is the later of--

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(B). However, the FDIC's appointment as receiver does not revive a claim, pursuant to 12 U.S.C. § 1821(d)(14)(B)(i), that is already barred by a state statute of limitations. <u>FDIC v. McSweeney</u>, 976 F.2d 532, 534 (9th Cir.1992) ("The FDIC may not . . . revive claims for which the state limitations period has expired before the date of federal receivership."), cert. denied, 508 U.S. 950 (1993). ;

In this instance, the plaintiff FDIC was appointed as receiver on December 4, 2009, and it filed this lawsuit on October 12, 2012. Under the Act, the FDIC's claims are timely, provided that the state law limitations period had not already run at time of appointment. Thus, the issue for the Court is to determine whether the plaintiff's claims were viable as of December 4, 2009.

In order to make this determination, the Court begins by considering when the plaintiff's claims initially accrued under state law. According to the defendant, the FDIC's claims accrued when Nova submitted the underwriting packages for each loan. The problem with this assertion is that the complaint does not state when the underwriting packages were submitted. Nova acknowledges as much and suggests, at least for the sake of the pending motion, that the Court consider the loan funding dates as the trigger for the accrual of the plaintiff's claims. Based on the complaint, the loans were funded on October 11, 2005 and October 24, 2005. With little else to go on, the Court accordingly assumes that the plaintiff's claims accrued on these dates.

The next issue is which statute of limitations applies. While the plaintiff maintains that Ohio's eight-year limitation period applies, the defendant urges application of Arizona's four-year statute of limitations relating to actions based upon an instrument in writing and executed outside of Arizona, pursuant to Ariz. Rev. Stat. § 12-544(3). The defendant contends that the Arizona statute applies, not Ohio's, in this instance, because the plaintiff's claims accrued in Arizona. In support, the defendant cites the Ohio Borrowing Statute, which requires the application of the shorter limitation period of another state, if the plaintiff's cause of action accrued outside of Ohio. See Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC, 702 F.Supp.2d 826, 835 (N.D. Ohio 2010). The Borrowing Statute provides, in pertinent part:

> No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired . . . .

Ohio Rev. Code § 2305.03. The purpose of the Ohio Borrowing Statute is to prevent a plaintiff from shopping for a forum to accomodate a claim that has otherwise expired. Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc., 852 F. Supp. 2d 925, 932 (S.D. Ohio 2012).

In the Court's view, it is not necessary, at this time, to determine whether the Ohio Borrowing Statute applies in this instance, because even if it did the defendant has failed to establish that Arizona's four-year limitation period would apply anyway. The Arizona statute referenced by the defendant refers to an action upon "an instrument in writing executed without the state." ARS § 12-544(3). The defendant's argument is that because the Loan Purchase Agreement was executed in Ohio, § 12-544(3) applies here. The trouble for Nova is that based on the papers before the Court there is no indication of where exactly the LPA was executed. On a motion to dismiss, the Court reviews the allegations contained in the plaintiff's complaint, and considers whether the plaintiff has stated a plausible claim for relief. Thus, the defendant's unsubstantiated assertion that the LPA was executed in Ohio fails to establish that A.R.S. § 12-544(3) applies in this instance.

Therefore, and because the defendant does not otherwise dispute the timeliness of the plaintiff's claims, the defendant's motion to dismiss will be denied.

*Motion to transfer*

The defendant alternatively requests a transfer of venue to the District of Arizona. As the moving party, the defendant has the burden to show that a transfer is appropriate.

7

As a threshold matter, the Court may entertain a motion to transfer only where the case might have been brought in the transferee court. 28 U.S.C. § 1404(a). "An action 'might have been brought' in a proposed transferee court if (1) the court has jurisdiction over the subject matter of the action, (2) venue is proper there, and (3) the defendant is amenable to process issuing out of the transferee court." McGowan & Co., Inc. v. Bogan, No. 1:11-CV-2620, 2012 WL 2046504, at *1 (N.D. Ohio June 6, 2012) (quoting Neff Athletic Lettering Co. v. Walters, 524 F.Supp. 268, 271 (S.D.Ohio 1981)).

In this instance, the threshold requirements for transfer of venue are satisfied. The District of Arizona has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 1345. Venue is proper because Nova maintains its principal place of business in Tucson, Arizona. Further, Nova is amenable to process in the District of Arizona.

In deciding whether a transfer of venue is proper, the court is guided by 28 U.S.C. § 1404(a), which states:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

28 U.S.C. § 1404(a).

The Court accordingly must balance the private interests of the parties and the public's interest in the administration of justice. In assessing the private interests, the Court considers (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of witnesses; (3) the possible need to view the

8

premises; and (4) all other practical problems that make a trial more convenient and less expensive. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947).

The public interests that must be balanced include any administrative difficulties of courts with clogged dockets; the burden of jury duty on people of a community having no connection with the litigation; the desirability of holding a trial near those most affected by it; and the appropriateness of holding a trial in a diversity case under a foreign state's law. Id.

The Court's § 1404 analysis begins with the plaintiff's argument that the private interest factors should weigh entirely in favor of Ohio, because the parties agreed to a forum selection clause. The plaintiff relies on Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013), for the proposition that parties waive "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses," by agreeing to a forum selection clause. Id. at 582.

The Court is not persuaded that the principle described in Atlantic Marine applies in this instance. Under Atlantic Marine, a party waives its right to challenge a preselected forum as inconvenient to the extent that enforcement of the forum selection clause, bargained for by the parties, "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013). In Atlantic Marine, the parties' legitimate expectations included the understanding that any litigation arising from the contract would take place in a particular forum to the exclusion of all others. In the present case, the parties had no such expectation, because the forum selection clause here, unlike that in Atlantic Marine, is permissive, not mandatory. "A forum selection

9

clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum." Braman v. Quizno's Franchise Co., LLC, No. 5:07CV2001, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008). "By contrast, a permissive forum selection clause merely authorizes jurisdiction in the specified forum, but does not require that forum to be the exclusive venue for litigation." Id.

In this instance, the parties agreed to the following:

7.15. The parties hereby consent and submit themselves to the jurisdiction and venue in any State or Federal court located in the City of Cleveland, Ohio for purposes of any legal or equitable proceeding arising from, out of or in connection with this Agreement or any transaction contemplated hereby. . . .

This forum selection clause contains no language clearly indicating that Ohio is the exclusive venue for litigation, and the Court is not persuaded that the language "for the purposes of *any* legal or equitable proceeding" limits venue to Ohio. As such, because the parties could not have legitimately expected that Ohio was the only forum in which a dispute might be litigated, the Court rejects FDIC's contention that Nova waived its right to challenge the clause on grounds of inconvenience, pursuant to Atlantic Marine.

In the Court's view, transfer of this matter to the District of Arizona will best serve the convenience interests of the parties and witnesses. Nova maintains its principal place of business in Arizona, while the plaintiff FDIC is a corporation created by federal statute, which appears to have no overriding connection to any state in particular. This dispute relates to loans secured by properties located in Arizona, and AmTrust foreclosed on the properties under Arizona law. Some of the likely witnesses reside in Arizona, and those who do not reside in Arizona are subject to compulsory process there. Further, the defendant notes that none of the likely witnesses in this case are

10

subject to compulsory process in the Northern District of Ohio. It would be more convenient and less expensive to litigate this matter in Arizona than it would be in Ohio.

The Court must give some weight to the FDIC's decision to file suit in Ohio, but it is not enough to tip the balance. The FDIC, by its own admission, has already showed a willingness to travel to Arizona for purposes of mediating this dispute, which tends to undermine any claimed inconvenience on the part of the plaintiff. And, while Amtrust Bank was based in Ohio, it no longer exists. The FDIC has stepped in as AmTrust's receiver, but the FDIC has no greater connection to Ohio than it does to Arizona. Although the FDIC succeeded to AmTrust's rights, titles, property, powers, and privileges, it would be a fiction to suggest that the FDIC, as a federally established insurer, inherited whatever inconvenience AmTrust would have experienced by litigating in Arizona. Furthermore, while the FDIC maintains that the Court should give considerable weight to the forum selection clause contained in the Loan Purchase Agreement, as discussed above, the forum selection clause at issue here is permissive, not mandatory. The forum selection clause leaves open the possibility that the parties might litigate their dispute outside of Ohio.

The public interest factors also weigh in favor of transfer. Except for Amtrust's role in this case, the facts underlying this dispute relate more closely to Arizona than Ohio. It would be preferable to hold a trial on this matter in Arizona, since the outcome of this case will have a greater effect there than here. Further, an Ohio jury, which would have little connection to the litigation, would be burdened by deciding issues that have little to do with the state.

One factor does weigh in favor of keeping the case in Ohio: the parties contract states that "[t]his Agreement shall be construed and enforced in accordance with the laws of the State of Ohio." A court in Ohio is generally more familiar with Ohio law than a court in Arizona would be, but, given that the § 1404 factors otherwise weigh in favor of transfer, this is not enough. On the whole, the defendant, has met its burden to show the § 1404 factors weigh strongly in favor of transfer. The Court will accordingly grant the defendant's motion to transfer this case to the District of Arizona.

## IV.

For the reasons stated above, the defendant's motion to dismiss is denied. The defendant's motion to transfer to the District of Arizona is granted. This matter is accordingly transferred to the District of Arizona, Phoenix Division.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Date: May 11 2015